428

## CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed May 18, 1916.

BAUGH CHEMICAL COMPANY
VS.
DAVISON CHEMICAL COMPANY.

*W. Irvine Cross, Frank R. Savidge* and *John G. Johnson* for Baugh Chemical Company.

*Venable, Baetjer & Howard* for Davison Chemical Company.

BOND, J.—

Inasmuch as the court has before it only the question of the issuance of an interlocutory injunction, it will confine its decision solely to the propriety of giving that temporary relief. The evidence has necessarily covered several of the questions involved in the prayers for final relief, but as the ultimate evidence upon them is not before the court none of those questions are finally decided.

My conclusion is that the evidence produced at the hearing on the petition enables the court to find these facts: There was a valid, subsisting contract in which the defendant undertook to supply the plaintiff with from 30,000 to 50,000 tons of sulphuric acid each year from 1913 to 1917, both inclusive, in equal weekly instalments. During the year 1915 and up to the time of the hearing the defendant failed to supply the acid in the full amounts stipulated for, and this was—and it still is—a serious detriment to the Baugh Company. According to evidence which seems to me predominating—and in this I take the statement in defendant's letter of January 20th, 1916, to be especially important—acid to replace that expected, but not received, from the Davison Company

was not until recently, practically and conveniently obtainable elsewhere. The Davison Company's assurance of early making up of shortages, which ran through its letters during 1915, seem to be likely to have stayed the hand of the Baugh Company, as has been argued, and so to have increased the difficulty in its filling from an outside market. As a result the Baugh Company has suffered a loss of profit of business, and of business opportunities; and this loss will be continued further unless the Davison Company fills the contract. And the payment of damages would, I conclude, be inadequate to meet the needs of the plaintiff.

The interruption to deliveries seems to have been only slightly, and indirectly, due to the European War. So far as I can see from the evidence the war can be said to have interfered only by causing the sellers of the principal ore to break their contracts with defendant, preferring European purchasers. The breakdown in the plant ascribed to moisture in the substituted ore is to be classed rather as an accident than as an interruption by war. I conclude, therefore, that there was no interruption traceable to war such as was contemplated in the provision for a reduction of deliveries in so far as war should prevent. But there was much interruption due to accidents and breakdowns in the plant throughout the year 1915, and up to this time, which cut down the capacity to an extraordinary extent. And as the defendant's contracts would have necessitated a full normal working of its plant, it was thus incapable of filling all these contracts.

Through the year 1915 the defendant was taking on new contract obligations, both running or open contracts, and contracts for spot sales. And the plaintiff contends that it was the assumption of these additional contracts, and the undertaking to fill these too, that actually caused the reduction of its own deliveries, and this, it urges, was, under the circumstances, a wrong against which the court should give it relief.

That the principle of a proportionate distribution of output among standing contract buyers, the principle of "prorating" as we have called it, should govern and determine the rights of the parties when the output is in-

voluntarily reduced, is, I understand, conceded. That seems to be implied in the contract clause concerning interruptions of deliveries, and I take it to be a principle which would guide the discretion of a court of equity in applying its remedy of specific performance. But there is undoubtedly to be borne in mind a possible distinction in the buyers among whom such a rateable distribution may be made. It could not be tolerated that a manufacturer should, on a rising market, keep adding contracts beyond his ability to fulfill, and then serve himself a turn by this principle of prorating. It is a principle which is properly applicable only to the contract buyers outstanding when the reduction of capacity is established. But these statements, I think, still require qualification. The manufacturer in providing for his future output must be permitted to estimate the extent and duration of his reduction and to contract according to his reasonable expectations beyond that. So he is meeting the situation properly if he contracts to the extent of his ability as it may reasonably appear from time to time; and buyers within that range must be included in the basis of rateable distribution to be made at times when their contracts call for deliveries.

At this point I have had difficulty in arriving at a conclusion on the facts. There is strength in the argument that such a continuous reduction in output as has existed during the last year seems inconsistent with any such expectations of increase as would justify the new contracts added from time to time during that period. Experience makes men suspicious of a motive behind a failure to make deliveries during the existence of a greatly advanced market. And in this case the successive assurances held out to the plaintiff, all disappointed, followed by the letter of January 20th, which under the direction of counsel and upon new ground denied any breach of contract at all; and followed, too, by the prospectus issued at the time of floating the new stock, were, without more, well calculated to heighten suspicion almost to the point of conviction. But the very full evidence produced at the trial to show the actual working at the plant, the reduction of output, the outstanding contracts, and the distribution, seems to me to leave no basis for

the issuance of the injunction now prayed. The suspected improper preference of later buyers over the plaintiff has, I think, not been established.

The remaining question of the feasibility of the court's giving specific performance of this contract by decree, is one which I think had better be left to the final hearing. Thus far I have not been able to devise a decree which might remedy such a situation as is contended for by the plaintiff. It seems to me difficult, at least, to fix the place of the plaintiff's contract for future rateable distributions, so as to give it a preference, and at the same time allow for the expiration of prior contracts, renewals, or the substitution and addition of new business. Yet fixing its place in such distributions seems the only conceivable method of enforcement. This I shall leave for further argument, if necessary.

An order dismissing the petition for a preliminary injunction will accordingly be signed.